IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: Acacia Media Technologies Corp. | NO. M 05-01665 JW<br>NO. C 05-01114 JW<br><br>**ORDER DENYING DEFENDANTS'<br>MOTIONS RE EXCEPTIONAL CASE<br>AND FOR ATTORNEY FEES** |

Presently before the Court are Defendants' Motions Re Exceptional Case and for Attorney Fees.[1] Defendants seek a determination by the Court that they are entitled to an award of attorney fees under 35 U.S.C. § 285. These Motions were taken under submission for a decision without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES Defendants' Motions.

**A.    Background**

This case involves Plaintiff's assertion of the following patents: U.S. Patent Nos. 5,132,992 ('992 Patent), 5,253,275 ('275 Patent), 5,550,863 ('863 Patent), 6,002,720 ('720 Patent), and 6,144,702 ('702 Patent). The technological background and procedural history are laid out in the

---

[1] (hereafter, "Motion," Docket Item No. 439.) Defendants Echostar Satellite LLC and Echostar Technologies Corporation filed the Motion, which was joined by the following Defendants: DIRECTV Group, Inc.; Ademia Multimedia, LLC; ACMP, LLC; AEBN, Inc.; Audio Communications, Inc.; Cyber Trend, Inc.; Cybernet Ventures, Inc.; Game Link, Inc.; Global AVS, Inc.; Innovative Ideas International; Lightspeed Media Group, Inc.; National A-1 Advertising, Inc.; New Destiny Internet Group, LLC; and VS Media, Inc. (See Docket Item Nos. 431, 440.)
   Other Defendants have also filed their own Motions for fees based on the same grounds. (See Docket Nos. 428, 429, 432, 433.)

Court's previous orders. (See Docket Item Nos. 266, 312, 350, 354.) On October 23, 2009, the Court entered Judgment in favor of Defendants against Plaintiff Acacia, and set a briefing schedule for Defendants' anticipated motions for attorney fees. (Docket Item Nos. 355, 356.)

### B. Legal Standards for Award of Attorney Fees Under 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "The award of such fees is discretionary with the trial court, but such discretion may only be exercised upon a specific finding of exceptional circumstances." Stevenson v. Sears, Roebuck & Co., 713 F.2d 705, 712 (Fed. Cir. 1983). "The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is a two-step process. First, the district court must determine whether a case is exceptional, [which is] a factual determination . . . . After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate . . . ." Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304 (Fed. Cir. 2009). Thus, even if a court finds a case to be exceptional, it has discretion whether to award attorney fees, and "must weigh factors such as degree of culpability, closeness of the questions, and litigation behavior." Nilssen v. Osram Sylvania, Inc., 528 F.3d 1352, 1359 (Fed. Cir. 2008).

"The exceptional nature of the case must be established by clear and convincing evidence." Wedgetail Ltd., 576 F.3d at 1304. "[O]nly a limited universe of circumstances warrant a finding of exceptionality in a patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" Id. A "multiplicity" of acts in one of these categories, viewed as a whole, may support finding a case exceptional, even if the acts viewed individually would be insufficient. Nilssen, 528 F.3d at 1359. The Federal Circuit "has rejected an expansive reading of § 285, which would permit findings of exceptionality in circumstances other than those listed above." Id. at 1305 (quotation marks omitted). Rather, absent litigation misconduct or inequitable conduct before the PTO, the Federal Circuit "has permitted the award of attorney fees to a prevailing accused infringer only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Id.

**C.   Litigation Misconduct**

Defendants move the Court to find this case exceptional on the ground that Plaintiff engaged in litigation misconduct. Defendants contends that the following acts, taken as a whole, constitute litigation misconduct:

> (1) Filing new actions involving the '992 and '702 Patents after the Court issued its first Claim Construction Order, in which it found that two claim terms were "arguably indefinite."
>
> (2) Filing new actions outside of the Central District of California after the Court had ordered that any new actions shall be filed in the Central District.
>
> (3) Submitting declarations from its expert with its opposition to one of Defendants' motions for summary judgment.
>
> (4) Changing its position regarding the proper construction of certain claims.
>
> (5) Seeking clarification of the Court's Order appointing a technical advisor.
>
> (6) Filing covenants not to sue as to several claims at various times during the litigation.
>
> (7) Moving for summary judgment against itself.

(Motion at 4-13.) Plaintiff contends that its conduct was not extraordinary, and that the Court never once found it to have violated any rule of procedure, never imposed sanctions for any conduct, and never made a finding that Plaintiff engaged in wrongful or vexatious litigation.[2] The Court addresses each act in turn.

**1.   Filing New Actions Involving Patent Claims Found "Arguably Invalid"**

The Federal Circuit has cautioned that, in the context of a court's decision whether a case is exceptional, "a patentee should not be automatically penalized for pursuing an infringement action after a determination of invalidity in another suit. There must be some finding of unfairness, bad faith, or inequitable conduct on the part of the unsuccessful patentee." Stevenson, 713 F.2d at 712.

---

[2] (Plaintiff Acacia Media Technologies Corporation's Opposition to Defendant Echostar's Motion Re Exceptional Case at 1, 18, hereafter, "Opp'n," Docket Item No. 444.)

3

Here, Defendants rely on the fact that the Court, in its first Claim Construction Order issued on July 12, 2004, found two terms in the '992 and '702 Patents "arguably invalid."[3] In its Order, the Court invited Acacia to move for an evidentiary hearing as to whether one of skill in the art could identify a corresponding structure for one of the terms deemed "arguably invalid," and invited Defendants to move for summary judgment of invalidity under 35 U.S.C. § 112, ¶¶ 1-2. (Id. at 21.) Soon after the Order, prior to any evidentiary hearings on invalidity, Plaintiff filed new actions involving the '992 and '702 Patents against other Defendants. (See Opp'n at 5-6.)

Based on the above facts, the Court finds that Plaintiff's filing of new actions after the Court found certain claims of the asserted patents to be "arguably indefinite" is not clear and convincing evidence of misconduct. Rather, under Federal Circuit law, even the filing of new actions after an actual determination of invalidity would not compel a finding of exceptional circumstances. Moreover, there is no evidence that Plaintiff acted in bad faith. In any event, these cases were eventually transferred to the Court as part of the multi-district litigation, and therefore, did not somehow escape the effect of the Court's determination as to the validity particular claims. Thus, the Court finds that this act by Plaintiff does not support finding the case exceptional.

### 2. Filing New Actions Outside of the Central District of California

In its December 12, 2003 Order, the Court stated:

> Plaintiff shall file any case involving the '992 patent or a patent which is a continuation or divisional of the '992 patent in the Central District of California, Southern Division. Plaintiff shall file a notice of related cases with this Court in any action that involves U.S. Patent Nos. '702, '992 or other patents held by Plaintiff filed outside of California.

(Crotty Decl., Ex. 7 at 3:2-5.) Defendants contend that Plaintiff violated the Court's December 12, 2003 Order by subsequently filing new actions outside of the Central District of California. (Motion at 6.) Plaintiff contends that it did not violate the Court's Order because the language of the Order contemplates filing actions "outside of California" if venue is not present in the Central District, so long as Plaintiff filed a notice of related cases. (Opp'n at 6-7.)

---

[3] (Declaration of Jason A. Crotty in Support of Echostar's Motion Re Exceptional Case, hereafter, "Crotty Decl.," Ex. 8, Docket Item No. 439-2.)

4

Here, the Court finds that Plaintiff's filing of new actions outside of the Central District of California is not clear and convincing evidence of misconduct. The language of the Order does not clearly rule out Plaintiff's filing of cases outside of the Central District. In fact, after Plaintiff filed its new actions outside of the Central District, rather than finding that Plaintiff violated the December 12, 2003 Order, the Court issued an Order to Show Cause as to why the new actions should not be related to the action in the Central District.[4] Thus, the Court finds that this act by Plaintiff does not support finding the case exceptional.

### 3. Plaintiff's Submission of Expert Declarations in Opposition to Defendants' Motion for Summary Judgment of Invalidity

Prior to the Court's first Claim Construction Order, the Court issued an Order Setting Claims Construction Hearing in which it instructed the parties that "no party shall file [an] expert declaration in support of its claim construction contentions." (Crotty Decl., Ex. 7 at 2:16-18.) Defendants contend that Plaintiff violated the Court's Order by filing expert declarations with its Opposition to Defendants' motion for summary judgment on the issue of invalidity following the Court's first Claim Construction Order. (Motion at 5; Crotty Decl., Ex. 11.)

Here, the Court finds that Plaintiff's filing of expert declarations with its Opposition to Defendants' motion for summary judgment is not clear and convincing evidence of misconduct. Rather, the Court's Order pertained to claim construction, not a motion for summary judgment on the issue of invalidity. Thus, the Court finds that this act by Plaintiff does not support finding the case exceptional.

### 4. Changing Positions Regarding the Proper Construction of Certain Claims

Defendants contend that Plaintiff engaged in litigation misconduct by "repeatedly chang[ing] its positions [as to claim construction], thus adding to the length and complexity of the briefing," and that Plaintiff's "flip-flopping appears to have been designed to evade the Court's Markman order and further add to the cost and complexity of the case." (Motion at 7-9.) Plaintiff contends

---

[4] (See Declaration of Alan P. Block in Support of Plaintiff Acacia Media Technologies Corporation's Opposition to Defendant Echostar's Motion Re Exceptional Case, hereafter, "Block Decl.," Ex. 5, Docket Item No. 445.)

5

that it's claim construction arguments naturally evolved over the course of the Court's six claim construction orders, and that Defendants have not presented any evidence of bad faith or litigation misconduct. (Opp'n at 10-11.)

Here, the Court finds that Plaintiff's changing of position as to certain terms to be construed by the Court is not clear and convincing evidence of misconduct. Over the course of the litigation, the Court issued six claim construction orders addressing dozens of claim terms. The Court finds no evidence of bad faith in Plaintiff's decision to change or adapt its position as to the proper construction of certain claim terms in light of the Court's construction of certain terms in each of its orders. Defendants have provided no evidence of bad faith by Plaintiff.[5] Additionally, the Court has discretion whether to consider any changed claim construction position held by the parties. The Court finds that it would hinder litigation and the claim construction process to find a change in claim construction position to be vexatious or improper, since the Court's role is to determine the proper construction, which may entail an evolving understanding of the claim terms. Thus, the Court finds that this act by Plaintiff does not support finding the case exceptional.

**5. Plaintiff's Seeking Clarification of the Court's Order Appointing a Technical Advisor**

Defendants contend that Plaintiff's request for clarification of the Court's Order appointing a technical advisor was improper because it required "defendants to brief more unnecessary issues." (Motion at 11.) Plaintiff contends that its request for clarification was made in good faith. (Opp'n at 12-13.)

On April 7, 2004, the Court appointed an advisor to assist it on technical matters. (See Crotty Decl., Ex. 20.) On February 18, 2005, Plaintiff moved for clarification of the Court's Order appointing the technical advisor. (See id., Ex. 21.) On June 21, 2005, the Court issued an Order clarifying the role of the technical advisor. (See Docket Item No. 21.)

---

[5] See Javelin Investments, LLC v. McGinnis, No. H-05-3379, 2007 WL 781190, *4 n.14 (S.D. Tex. Jan. 23, 2007) (declining to infer bad faith from the plaintiffs' "admittedly head-swerving changes of position").

6

Here, the Court finds that Plaintiff's request for clarification is not clear and convincing evidence of misconduct. Plaintiff requested clarification as to whether the advisor was a "technical advisor" or a Rule 706 expert, because, *inter alia*, the Order appointing the advisor simultaneously stated that he was being appointed as an expert pursuant to Fed. R. Evid. 706 and as a consultant to the Court. In the Court's June 21, 2005 Order, the Court did not criticize or sanction Plaintiff for making its request, but instead clarified that the advisor was appointed as "a technical adviser only." (See Docket Item No. 21 at 2.) Thus, the Court finds that this act by Plaintiff does not support finding the case exceptional.

### 6. Plaintiff's Filing of Covenants not to sue and Moving for Summary Judgment Against Itself

Defendants contend that Plaintiff engaged in misconduct by serially filing covenants not to sue in order to prolong litigation as long as possible and by moving for summary judgment against itself on the issue of invalidity. (Motion at 12-13.) Plaintiff contends that it made these strategic decisions when it determined that certain claims were no longer viable, and in the interest of judicial efficiency. (Opp'n at 13-14.)

The Federal Circuit, in affirming a denial of attorney fees, has recognized that "[c]laims and defendants frequently are dropped and amended during the course of a lawsuit. Moreover, sound judicial policy encourages a narrowing of issues." Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 694 (Fed. Cir. 2001).

Here, Plaintiff does not dispute that it in fact withdrew certain claims at various times over the course of the litigation. (See Opp'n at 13.) On January 20, 2006, Plaintiff moved for summary judgment against itself as to noninfringement and invalidity of the '702 Patent in order to take up an appeal immediately. (See Docket Item No. 120.) On October 19, 2007, the Court denied Plaintiff's motion without prejudice to be renewed following the completion of claim construction. (See Docket Item No. 259 at 17.) On June 17, 2008, Plaintiff again moved for summary judgment against itself on the issues of noninfringement and invalidity of certain claims. (See Docket Item No. 287.)

7

1 The Court ultimately denied the motion after issuing an order to show cause as to why summary
2 judgment should not be granted. (See Docket Item Nos. 312, 318.)

3 Based on the above facts, the Court finds that Defendants have presented no evidence that
4 Plaintiff withdrew claims at various times in bad faith or in any manner that would constitute
5 litigation misconduct. The fact that Plaintiff withdrew certain claims following a claim construction
6 order unfavorable to Plaintiff does not show bad faith. (See Motion at 12.) Rather, as a general
7 matter, the Court encourages parties to withdraw claims if they determine that assertion of those
8 claims cannot be maintained. Thus, the Court finds that this act by Plaintiff does not support finding
9 the case exceptional.

10 Additionally, the Court finds that Defendants have not shown that Plaintiff's motions for
11 summary judgment against itself constitute litigation misconduct. Rather, in the Order to Show
12 Cause, the Court stated "[a]lthough the motion is unusual in that Plaintiff moves for summary
13 judgment against itself and in favor of Defendants, the Court finds that the motion is meritorious."
14 (Docket Item No. 312.) Thus, the Court finds that this act by Plaintiff does not support finding the
15 case exceptional.

16 In sum, the Court finds that the acts relied on by Defendants, whether taken individually or
17 as a whole, do not support a finding that the case is exceptional under 35 U.S.C. § 285.
18 Accordingly, the Court DENIES Defendants' Motion as to the ground of litigation misconduct.

19 **D.    Inequitable Conduct Before the Patent Office**

20 In the alternative, Defendants move the Court to find this case exceptional on the ground that
21 Plaintiff committed inequitable conduct before the Patent Office in procuring the '992 Patent.
22 (Motion at 16-18.) Plaintiff contends that there has been no finding of inequitable conduct in this
23 case, the references relied on by Defendants are not prior art, are not material to patentability, were
24 not withheld with intent to mislead the Patent Office, and that the record before the Court is
25 insufficient to support the detailed factual analysis that a finding of inequitable conduct would
26 entail. (Opp'n at 20.)

In deciding whether a case is exceptional, a district court must address the issue of inequitable conduct, even if raised for the first time in a motion for attorney fees. See Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1380-81 (Fed. Cir. 1999); A.B. Chance Co. v. RTE Corp., 854 F.2d 1307, 1312-13 (Fed. Cir. 1988). "[W]here the existence of bad faith during proceedings before the PTO fails to rise to the level of inequitable conduct, no gross injustice is prevented by ordering payment of attorney fees, and . . . proper application of the law dictates that the award of attorney fees be reversed." McNeil-PPC, Inc. v. L. Perrigo Co., 337 F.3d 1362, 1372 (Fed. Cir. 2003).

"Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a duty of candor and good faith to the PTO. A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose information material to patentability, coupled with an intent to deceive the PTO. Both of these elements, intent and materiality, must be proven by clear and convincing evidence." M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 439 F.3d 1335, 1339-40 (Fed. Cir. 2006). "Once the record supports the threshold levels of materiality and intent, the ultimate determination of inequitable conduct is within the discretion of the district court. In making this determination, the court must conduct a balancing test between the levels of materiality and intent, with a greater showing of one factor allowing a lesser showing of the other." Union Pac. Res., 236 F.3d at 693.

"Intent to deceive [cannot] be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." M. Eagles Tool Warehouse, Inc., 439 F.3d at 1340. Intent need not be proven by direct evidence. Id. at 1341. However, "[w]hen the absence of a good faith explanation [for failure to disclose] is the only evidence of intent,[] that evidence alone does not constitute clear and convincing evidence warranting an inference of intent." Id.

Here, Defendants rely on a report (the "Sarnoff Report") commissioned by one of the inventors of the '992 Patent during the application process. (See Crotty Decl., Ex. 2.) It is undisputed that the application for the '992 Patent was filed on January 7, 1991. (See Motion at 2;

9

Opp'n at 4.) On March 6, 1992, one of the inventors of the '992 Patent commissioned the David Sarnoff Research Center to provide a technical analysis of the invention of the '992 Patent. (See Crotty Decl., Ex. 5.) On April 20, 2002, the Sarnoff Report was provided to the inventor. (See id.) The Report states in its "scope" section that "our review . . . is at a general technical level, and is not intended as an expert evaluation of patentability." (Id. at 2.) The Report's "summary" states as follows:

> The patent document supplied by [the inventor] outlines a generic set of technologies necessary for a video-on-demand system. The general principles of the system described in the patent are believed to be technically correct, though significant additional design detail will have to be developed before a proof-of-concept prototype can be implemented. Based on our review of published material (see references) in the area of video-on-demand, interactive multimedia, etc., we do not consider the overall system architecture to be novel in a scientific/technological sense.

(Id.)

Defendants contend that the Report as well as 28 references cited by the Report—some of which were published after the '992 application date—constitute material information that Plaintiff withheld with intent to deceive the Patent Office.[6] However, Defendants provide the Court with almost no factual analysis as to why each reference was material to patentability, other than the general statement that they "disclosed various aspects of the system outlined in the [patent] application." (Motion at 3.) More significantly, even assuming that the Report and its references were material to patentability, Defendants have offered no evidence of intent other than the fact of nondisclosure. Nondisclosure, even without a good faith explanation, is insufficient by itself to satisfy the element of intent for inequitable conduct. M. Eagles Tool Warehouse, Inc., 439 F.3d at 1341. Defendants contend that because Plaintiff has failed to provide any explanation whatsoever for the failure to disclose the 20+ references listed in the Sarnoff Report, intent to deceive should be imputed to Plaintiff. (Reply at 3.) The Court finds that this contention is misplaced because it is Defendants who must show materiality and intent by clear and convincing evidence. Defendants

---

[6] (Motion at 3-4; Reply Memorandum in Support of Motion Re Exceptional Case at 2-3, hereafter, "Reply," Docket Item No. 446.)

10

have failed to meet that burden. Thus, the Court finds that Defendants have failed to present sufficient evidence of inequitable conduct.

Accordingly, the Court DENIES Defendants' Motions as to the ground of inequitable conduct.

**E.    Conclusion**

The Court DENIES Defendants' Motions Re Exceptional Case and for Attorney Fees.

As Judgment has been entered, the Clerk of Court shall close this file and all member cases.

Dated:  May 25, 2010

JAMES WARE
United States District Judge

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adam R. Alper aalper@kirkland.com
Alan P. Block blocka@hbdlawyers.com
Albert L. Underhill aunderhill@swlaw.com
Annamarie A. Daley aadaley@rkmc.com
Asim M. Bhansali amb@kvn.com
Benjamin Hershkowitz bhershkowitz@gibsondunn.com
Bobby T. Shih bshih@mount.com
Bradford P. Lyerla blyerla@marshallip.com
Bryant Carroll Boren bryant.c.boren@bakerbotts.com
Christopher Scott Marchese marchese@fr.com
Christopher W Kennerly chris.kennerly@bakerbotts.com
Daniel Reisner dreisner@kayescholer.com
Daniel E. Jackson djackson@kvn.com
Daralyn J. Durie ddurie@durietangri.com
David Benyacar dbenyacar@kayescholer.com
David A. York david.york@lw.com
David Jason Silbert djs@kvn.com
Emmett J. McMahon ejmcmahon@rkmc.com
Harold J. McElhinny HmcElhinny@mofo.com
J. Timothy Nardell tim@jtnlaw.com
James Michael Slominski jslominski@hh.com
Jason A. Crotty jcrotty@mofo.com
Jeffrey D. Sullivan jeffrey.sullivan@bakerbotts.com
Jeffrey H. Dean jdean@marshallip.com
John C. Englander jenglander@goodwinprocter.com
Jon-Thomas Bloch jbloch@marshallip.com
Jonathan Elliot Singer singer@fr.com
Juanita R. Brooks brooks@fr.com
Kevin D. Hogg khogg@marshallip.com
Kevin G. McBride kgmcbride@jonesday.com
Marc Morris morrism@hbdlawyers.com
Maria Kara Nelson mknelson@jonesday.com
Marsha Ellen Mullin memullin@jonesday.com
Matthew Ian Kreeger mkreeger@mofo.com
Michael J. McNamara michael.mcnamara@bakerbotts.com
Mitchell D. Lukin mitch.lukin@bakerbotts.com
Morgan William Tovey morgantovey@quinnemanuel.com
Patrick J. Whalen pwhalen@spencerfane.com
Paul A. Friedman pafriedman@mofo.com
Rachel Krevans rkrevans@mofo.com
Richard R. Patch rrp@cpdb.com
Robert Donald Carroll rcarroll@goodwinprocter.com
Roderick G. Dorman dormanr@hbdlawyers.com
Sean David Garrison sgarrison@lrlaw.com
Stephen P. Safranski spsafranski@rkmc.com
Todd Glen Miller miller@fr.com
Victor de Gyarfas vdegyarfas@foley.com

Victor George Savikas vgsavikas@jonesday.com
William Joseph Robinson wrobinson@foley.com
William R. Overend woverend@reedsmith.com
William R. Woodford woodford@fr.com

**Dated: May 25, 2010**            **Richard W. Wieking, Clerk**

                                             **By:   /s/ JW Chambers**
                                                **Elizabeth Garcia**
                                                **Courtroom Deputy**

**United States District Court**
For the Northern District of California